IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 2:21-cr-00320-MMB-1 |
| v. : | |
| : | |
| ROBERT FRYER : | Honorable Michael M. Baylson |

**DEFENDANT'S SENTENCING MEMORANDUM**

I. **PRELIMINARY STATEMENT**

On October 4, 2021, Defendant Robert Fryer entered a guilty plea before this Court to a fifteen count Information charging him with one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count One), four counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts Two through Five), and ten counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Six through Fifteen). He will appear before this Court on May 11, 2022 for sentencing. This memorandum in aid of sentencing is respectfully submitted through his counsel.

II. **SENTENCING GUIDELINES RANGE**

Mr. Fryer agrees with the Sentencing Guideline calculations of the government, as set forth in the government's sentencing memorandum. With a 3-point reduction for early acceptance of responsibility, the applicable Adjusted Guideline Level is 20, with no criminal history which places him in Criminal History Category I. This would provide for a guideline range for imprisonment of 33 to 41 months. The government has filed a motion under Section 5K1.1 for a downward departure from the sentencing guidelines range based upon the defendant's substantial assistance in the investigation and prosecution of another.

The defendant submits that a variance from the guidelines is appropriate for reasons discussed within this memorandum below. Given the character of the defendant, his lack of any

1

criminal record, his immediate acknowledgement of his crimes, his cooperation and assistance to the government, and the need to avoid sentencing disparities, it is submitted that a significant variance in the term of any imprisonment serves the purpose of sentencing and is no greater than necessary to comport with the federal sentencing factors which must guide this Court's determination.

### III. THE APPLICABLE SENTENCING STANDARD

The appropriate standard for imposing a sentence is well known to this Court and need not be articulated at length. Simply stated, the Sentencing Guidelines that were once mandatory are now advisory and the properly calculated sentencing guideline range is now but one factor in the Court's sentencing determination. A district court must "impose a sentence sufficient but not greater than necessary" to comply with the purpose of sentencing set forth in 18 U.S.C. § 3553(a)(2). The Third Circuit has interpreted the statute as requiring the imposition of a sentence which is "minimally sufficient" to achieve the stated purposes of sentencing. *United States v. Serafini*, 233 F.3d 758, 776 (3d Cir. 2000). S*ee also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (Guidelines are guidelines—that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense).

A district court must "impose a sentence sufficient but not greater than necessary" to comply with the purpose of sentencing set forth in 18 U.S.C. § 3553(a)(2). The purposes of sentencing include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional

treatment in the most effective manner". 18 U.S.C. § 3553(a)(2)(A), (B), (C) and (D).

The courts must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; the Sentencing Guidelines; and "the need to provide restitution to any victims of the offense". 18 U.S.C. § 3553(a)(1), (3), (4) and (7).

Of significant note, there is a growing sea change both in the courts and in public perception of what sentences our society should impose. See e.g. *United States v. Johnson*, 245 3d 393, 396 (E.D.N.Y. 2017) ("In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is encouraged"); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony:* the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV. SENTENCING GUIDELINE VARIANCE

The 3553 factors to be considered at sentencing warrant and justify that the sentencing guideline range determined in this case should be reduced by way a significant variance.

### a. The History And Characteristics Of The Defendant

Section 3553(a)(1) requires that a sentencing court examine the history and characteristics of each defendant that appears before it in order to impose a sentence that balances the offense with other relevant factors. The Supreme Court has recognized that "it has been 'uniform and constant in the federal judicial tradition' for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate

… the crime and punishment to ensue." *United States v. Koon*, 518 U.S. 81, 113 (1996). We ask for the same consideration from this Court.

Until the time of his involvement in the activity charged in the Indictment, Robert Fryer was a success story. Fryer led a crime free life until he participated in the activity which brings him before this Court.

With Fryer's arrest and prosecution, his life changed. He has since the day of his arrest suffered the collateral consequences of his offense. He has understandably lost his job at USGA, his marriage is extremely strained, his future job prospects in areas in which he has thrived are bleak. His life as he knew it and the financial wherewithal of his family largely vanished.

Since his arrest, the defendant has shown extreme remorse for this conduct. He accepted responsibility. On his first meeting with the FBI he admitted what he had done. He continued to meet with the FBI to assist them in their investigation. He acknowledged the full extent of his crime, and he implicated others and agreed to assist in their investigation and prosecution. He resigned from the USGA. He knows he has no one to blame but himself for where he stands today.

On September 6, 2021, Fryer met with attorney representatives for the USGA at their Headquarters in New Jersey. He did so without hesitation and at their request. They were interested in knowing directly from him what he did in regards to this case and learn how he was able to accomplish it. The USGA was very interested in changing any deficiencies in their security concerning ticket distribution and sale, and the handling of tickets for USGA golfing events. Rob was open, forthright, and identified to them not only what he did and the outsiders that he did this with, but also identified 2 other employees at USGA that were involved in the unauthorized taking of tickets. They have since resigned.

The letters submitted on his behalf help to draw a more complete picture of the man to be sentenced than the Information counts that he earned. Devoted son and brother, self-less friend to others, youth sports community service minded – this background of Fryer must be considered in understanding that although this defendant has been convicted of a violation of federal law, he is a community asset who will, following sentencing, immediately once again contribute to a society which will soon feel his absence. All these letters, when reviewed in depth, explore the attributes of a fine man who will rise again after sentencing. He has the will and determination to continue to be a strong contributing force within his community. This will be his redemption. There is no risk of recidivism. The letters have previously been submitted to this court. A few excerpts are warranted herein:

> Rob has always been the benchmark against whom I raised my children to be. Susan Elfont
>
> I spoke to Robbie recently after a Gamblers Anonymous meeting. Anyone who knew Robbie during his gambling years who speaks to Robbie now knows instantly that something has changed. The part of him that drove the gambling addiction has been laid to rest and isn't coming back. You can hear it in his voice. Rob has shamed his family & lost his career. He's hit rock bottom. . . the gambling side of him was laid to rest thanks to his time in GA. Justin Goldman
>
> I met Robert in November of 2020 at our local Doylestown, PA Gamblers Anonymous weekly meeting. He was a man who was lost, confused, and deeply distraught. The insidious world of gambling addiction had finally caught up to him, and he had to face the destruction he created. Next month marks my 9-year anniversary in the same program and room that Robert now calls his own. I've not seen any who has been an example of repentance, courage, and humility than he has shown. There are many of us who look to him for leadership as a model of the program and example of what "surrender" looks like. The GA Program offers a chance for a normal way of thinking and living. It is a proven formula which asks only that we commit to it, and Robert has… With the proper accountability and guidance that he has proven commitment to, I have no doubt his road to recovery will continue to make us all

proud. (Name in the original submission to the court)

I have known Robert for over one year now, during which time he has served as the room secretary, for our Monday night Gamblers Anonymous meetings, in Doylestown, PA. Robert has transformed into a solid citizen, understanding his challenges with his compulsive gambling addiction, and has followed the path outlined in the 12-step program, to become who he is today. Robert is a vital part of our group, and has helped many newcomers, and I consider him a friend. . .  I truly believe he is committed to improving his life, the lives of his family, and helping others who suffer from this insidious disease. (Name in the original submission to the court)

The Fryers are strong and vital members of our community.  They organize and host many neighborhood family events around holidays.  They are the family who initiates help from others for any neighbor or friend in need.  Rob and his brother were active in year round community sports and high school sports as well.  They are active members of their church.  Rob is surrounded by caring and supportive family and his peers.  Jane and John Gibbons

Rob joined the Deep Run Valley Sports Association six years ago and has served as coach, equipment manager, and in various other areas. Rob's contributions have been invaluable. . . He has been a true asset to the children of the club.  William F. Van Sant, III, President DRVSA

Rob has always been a great father, husband, son, and friend. He is a very thoughtful and loyal person and always looks to help others in any way he can. He is active member of the community and has a passion for passing down his love for sports to the youth in the community. Most importantly though, Rob is a father of three young children who love him dearly and need him in their lives. Rob has expressed remorse and is apologetic for his decisions that have led to this situation. Rob is an extremely hard-working individual … Ryan Campanelli

Rob has attended Gamblers Anonymous every week since the day he was visited by the FBI.  He has devoted every minute to staying healthy, sober, and supporting his children and wife. . . He has been devastated by what he has done.  Ryan Gallagher

I know Rob is terribly sorry for his actions and the impact those action have had on many people he loves.  He has owned his mistakes and has been a consistent participant in a gambling treatment program.  Gene and Kathy Conway

> While I do not know the exact details of what he did, I can speak to his exceptional character and dedication to his family, especially to his parents, his wife, and his children. He is an extremely loving son, husband, and father.  Rachel Cole

> Rob genuinely understands the gravity of the situation and is apologetic for his decisions. He understands that he must incur consequences for above. Despite this, Rob is a great father, husband, son, brother and friend. I have known Rob for much of my life and he is an incredibly thoughtful and loyal person. He made a bad decision which must be accounted for but Rob is an excellent person who is integral to his family, friends and community.  Ryan Taylor

These letters show a humble and repentant man who has committed himself to overcome his gambling addiction, which is not offered as an excuse for what he did but to offer insight into Mr. Fryer's background and his serious need to continue in an unbroken fashion with therapy.

In addition, Mr. Fryer' Pretrial Services Report shows that he is a man that has been and will remain compliant with court supervision.  It also shows that he attends weekly Gamblers Anonymous meetings, providing verification to Pretrial Services as directed.  The defendant also attends weekly addiction support with the Hope Heals Group at Living Hope Community Church.

  b.  **Just Punishment**

Robert Fryer is 40 years old with 3 children.  His cooperation with the government and the USGA, as well as his recognition of his gambling addiction and his strong actions to combat that illness, develop the facts that warrant a variance in the sentencing guidelines.  It has been repeatedly said by many courts that criminal justice in America consists of two goals, punishment and reformation.  Fryer has been and will continue to be punished for his offenses but the need for his transformation back to society need not be unduly delayed.  Fryer has shown since his arrest that he can comply with supervision, remain crime free, and avoid criminal conduct.  He has shown that he can take on the need for him to deal with his gambling addiction, and to pour his energy,

and focus his attention, into this endeavor. Therefore, should the court grant a variance in the incarceration term, there is great assurance in knowing that he can and will lead a life that is crime free. The age of the defendant also dictates against his risk of recidivism. The Sentencing Commission has found that recidivism rates decline relatively consistently as age increases. See U.S. SENTENCING COMMISSION, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES 12, ex. 9 (2004). A sentence significantly below the guidelines will be, given this analysis, sufficiently lengthy to constitute a just sentence.

### c. Need For Adequate Deterrence

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See Andrew von Hirsch et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999)* (concluding that "correlations between sentence severity and crime rates … were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. … Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug*

*Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame"). The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level…" The guidelines' offense level is not intended or designed to predict recidivism." *U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"]. See also Part IV.A.3, infra. And according to "the best available evidence, … prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Should the Court believe that sentences do equate to deterrence, it is submitted that a term of incarceration significantly below the sentencing guideline range is sufficient to accomplish that deterrence. General and specific deterrence are achieved by a sentence below the sentencing guideline range. Mr. Fryer pled guilty to a serious offense. He has expressed genuine remorse for his conduct. He has exhibited this remorse to those who know him best and who believe his words of contrition are meaningful and ring true. It is highly improbable that he will again violate the laws of the United States. The government has acknowledged this in its sentencing memorandum, with the proviso that he continue to attend Gambler's Anonymous. To be sure, Mr. Fryer fully understands the enormity of his conviction and that the government will be ever watching him during his term of supervised release. On supervised release, this defendant will be fully aware

that any transgressions will immediately result in re-arrest and prosecution. This is total deterrence and warehousing for a term as reflected in the Sentencing Guidelines is not required.

The recommended sentence of incarceration below the guideline range is also sufficient to serve notice to others who commit, or are inclined to commit, similar offenses that the Justice Department has long arms that can reach into professional associations and that transgressions will be forcefully dealt with and result, as in this case, in a life altering consequences. To the extent that punishment deters others from committing crimes, a sentence in excess of that sought does nothing, it is submitted, to add further deterrence to others. The public filing of the charges against him, his very public prosecution, his conviction, sentencing, and financial distress have served as evidence to the public of what may happen to those who violate the law.

### d. The Requested Sentence Of Variance From The Guidelines Avoids Unwarranted Disparities

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Co-conspirator Jeremi Conaway was sentenced by this court to a term of imprisonment of 60 days on March 23, 2022.

### e. Promote Respect For The Law

Unduly harsh sentences breed disrespect for the law. As the Supreme Court observed in *Gall*: "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quoting with approval the reasoning of the district court); see also *United States v. Deegan*, 605 F.3d 625, 655 (8th Cir. 2010 (Bright, J., dissenting) (observing that harsh federal punishment when compared to lenient state sentencing for the same criminal activity "promotes disrespect for the law and the judicial

system."); *United States v. Ontiveros*, 07–CR–333, 2008 WL 2937539, at *3 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]."); Cf. *United States v. Irey*, 612 F.3d 1160, 1239 (11th Cir. 2010) (Hill, J., concurring) (noting that "[u]nwarranted sentencing disparity breeds disrespect for the rule of law …"); *United States v. Stern*, 590 F. Supp. 2d 945, 957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake."). Thus, careful application of the § 3553(a) factors is imperative and pivotal in providing just punishment promoting respect for the law.

## V. <u>SENTENCING RECOMMENDATION</u>

Robert Fryer appears before this Court for sentencing as man who committed a serious offense. He has taken responsibility for his transgressions, cooperated with the government, and holds himself responsible for being before this Court. He recognizes the serious nature of his crime and does not make a plea for probation. He understands the consequences of his acts but seeks a variance from his guideline range as that granted to his co-defendant Jeremi Michael Conaway. The remaining question for this Honorable Court is what sentence should be imposed in a case such as this one. Even before the sentencing is completed, Mr. Fryer has become a national pariah in his beloved profession. However, as reinforced by those that know him, he has the true character to rebuild his life and restore the loving trust that others have placed in him. There is no doubt that Rob Fryer will once again be recognized for his strengths and not be defined by this prosecution.

The redeemable qualities of this defendant at this time in his life present the court with the ability to impose a term of imprisonment that is a significant downward variance from the guideline range. This sentence does not diminish the seriousness of the offenses but takes into

consideration the true nature of this man, the long and distinguished life he has led, his dedication to his family, friends, and his community, particularly children engaged in character building sports activities. All these brand Robert Fryer as an individual who has much good to return to society.

Thus, the question for this noble court is what sentence is necessary to satisfy the factors required to be considered by the Court. It is easy for any court to impose a harsh sentence in cases involving fraud against victims. It is more difficult to impose a reasoned and balanced sentence that would be supported by the facts of this case. A sentence well below the guideline range would take into consideration the seriousness of the offense, punishment, adequate deterrence, and the need to protect the public from further crimes of the defendant. It most importantly recognizes his immediate admission to the offense, his cooperation with the government, and his strong efforts to deal with his personal devil – his gambling addiction.

Each defendant that appears before this Court is an individual who must be judged within the framework of the Sentencing Guidelines and tempered by the vision as to whether a defendant is redeemable with the real chance that they can be rehabilitated and contribute to society. This court can be confidant that granting a variance serves the important needs of both the community and the defendant. It is clear that Mr. Fryer understands that the government is watching, as well as the significance of the crossroads of his life that he now approaches. He wholly understands that he has been shamed in the community and that this shame has brought a shadow on his reputation and character. The question then becomes what sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Under the circumstances of this case, we respectfully request the court to impose a sentence of incarceration that is well below his sentencing guideline range. Such a sentence as his co-

conspirator received is an appropriate sentence in this case. Such a sentence would meet the stated purposes of federal sentencing. The future of Robert Fryer is humbly presented to this Court for proper consideration.

                                                        Respectfully Submitted:

Dated: May 10, 2022                By:   _/s/ Robert E. Goldman_
                                                        Robert E. Goldman, Esquire
                                                        PA Attorney I.D. # 25340
                                                       535 Hamilton Street, Suite 302
                                                       Allentown, PA 18101
                                                       (610) 841-3876
                                                       reg@bobgoldmanlaw.com
                                                       Counsel for Defendant Robert Fryer

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 2:21-cr-00320-MMB-1 |
| v. : | |
| : | |
| ROBERT FRYER : | Honorable Michael M. Baylson |

### **CERTIFICATE OF SERVICE**

I, Robert E. Goldman, Esquire do hereby certify that on this date I did cause a true and correct copy of the foregoing *Defendant's Sentencing Memorandum* to be filed with the Court, and caused the same to be served upon the following individuals via E-Mail at the addresses indicated below:

The Honorable Michael M. Baylson
United States District Court for the Eastern District of Pennsylvania
3810 United States Courthouse
601 Market Street
Philadelphia, PA 19106
*Chambers_of_Judge_Michael_Baylson@paed.uscourts.gov*
*Lori_DiSanti@paed.uscourts.gov*

AUSA Michael Lowe
U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
*mike.lowe@usdoj.gov*

U.S. Probation Officer Joseph A. Petrarca
Philadelphia, PA
*joseph_petrarca@paep.uscourts.gov*

Dated: May 10, 2022      By: _____
Robert E. Goldman, Esquire
PA Attorney I.D. # 25340
535 Hamilton Street, Suite 302
Allentown, PA 18101
(610) 841-3876
reg@bobgoldmanlaw.com
Counsel for Defendant Robert Fryer